**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHNNIE L. PETTAWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 10 C 7190 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Johnnie L. Pettaway seeks judicial review of the decision by defendant

Commissioner of the Social Security Administration ("SSA"), denying plaintiff's application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff and

defendant have filed cross-motions for summary judgment. For the reasons stated below,

plaintiff's motion is granted, and defendant's motion is denied.

**I.     Procedural History**

Plaintiff applied for DIB and SSI in 2004, claiming that he had been disabled since July

21, 2003. Following a hearing, the ALJ found that plaintiff suffers from multiple severe

impairments: an injured right shoulder rotator cuff, affective disorder, and substance abuse.

However, the ALJ found that plaintiff had the residual functional capacity to do unskilled

medium exertion work despite his impairments, and that he was able to perform past relevant

unskilled work in shipping. The ALJ concluded that plaintiff was not disabled, and denied

plaintiff's application for benefits on April 25, 2007.

The Appeals Council granted plaintiff's request for review, and on December 11, 2008

vacated the hearing decision and remanded the case for further proceedings. The Appeals

Council found that the hearing decision did not contain an adequate evaluation of the opinion of

plaintiff's treating psychologist, Dr. Jean Roe, or its impact on plaintiff's maximum residual

functional capacity. The Appeals Council directed the ALJ to take the following actions on

remand:

- Give further consideration to plaintiff's maximum residual functional capacity during the entire period at issue and provide a rationale, with specific references to evidence in the record, in support of any assessed limitations.

- Evaluate the treating source's opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such evidence.

- Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base.

- Apply the steps of the sequential evaluation process in 20 CFR 404.1520 and 416.920 to a consideration of all of plaintiff's combined impairments, including his drug and alcohol use.

- If the ALJ found plaintiff to be disabled, he should conduct further proceedings to determine whether drug addiction was a contributing factor that is material to a disability determination.

On remand, the same ALJ held a hearing on May 19, 2009, at which he heard testimony

from plaintiff, medical expert Larry Kravitz, and vocational expert William Sweis.[1] On June 15,

2009, the ALJ again denied plaintiff's application for benefits. The Appeals Council denied

plaintiff's request for review. Plaintiff filed this appeal on November 7, 2010.

## II.     Factual Background

Plaintiff was born in 1960. Before July 2003, plaintiff did shipping and receiving work,

_____

[1] The ALJ incorrectly identified the vocational expert as Cheryl R. Hoiseth in his ruling on remand.

and worked as a sander.

Plaintiff started receiving treatment for a shoulder injury in 2003. A December 6, 2004 evaluation report by Dr. William McKenna indicated that plaintiff lacked full range of motion in his right shoulder. That report also described plaintiff as a "[p]atient with intermittent weakness and intermittent loss of use in right hand." Plaintiff continued to seek treatment for shoulder pain in 2008, although his range of motion in the shoulder had improved. Plaintiff was scheduled to have shoulder surgery on October 30, 2008.

Plaintiff's shoulder surgery was cancelled, however, after plaintiff had an abnormal electrocardiogram during a preoperative heart stress test. The stress test revealed that plaintiff's heart was mildly enlarged, there was generalized hypokinesis,[2] and the ejection fraction[3] was calculated at 34%. Plaintiff had a cardiac catheterization on December 1, 2008, after complaining of intermittent chest pain and increased shortness of breath on exertion. This procedure revealed moderate, diffuse, left ventricular hypokinesia; an estimated ejection fraction of 30%; and mild nonobstructive coronary disease. Plaintiff testified at the hearing on remand that he experiences an ache similar to heartburn for five to ten minutes approximately every two weeks.

Plaintiff testified at the hearing that he continues to experience intermittent shoulder pain, and that the pain has remained the same. Plaintiff testified that lifting and reaching bother his

---

[2] Hypokinesis is diminished cardiac function. *See* Stedman's Medical Dictionary 934 (28th ed. 2006).

[3] The ejection fraction is the proportion of the blood in the left ventricle that is ejected during contraction of the heart muscle. An ejection fraction of less than 50% is abnormal. *See* Roscoe N. Gray & Louise J. Gordy, Attorneys' Textbook of Medicine Vol. 7, ¶ 32.85 (3d ed. 2010)

shoulder, although at times when he is not experiencing shoulder pain he can do tasks such as lift a gallon of milk, handle doorknobs, and button buttons. Plaintiff does not have any trouble standing, walking, sitting, bending down, or stooping. He does household chores such as carrying groceries, washing dishes, and taking out trash. Plaintiff takes Naproxen for his shoulder pain. This medication takes approximately fifteen minutes to work, but takes the pain away completely for a time; plaintiff experiences no side effects from this medication. As of the date of the hearing on remand, plaintiff's shoulder surgery had not been rescheduled.

In addition to receiving treatment for his shoulder problem, plaintiff has been receiving treatment for depression and substance abuse since approximately 2003. Plaintiff was hospitalized in 2004, when he had thoughts of killing a urologist whom he believed to have botched an earlier surgery. At that time, plaintiff was also hearing voices telling him to kill the doctor. Plaintiff was diagnosed with major depression with psychotic features.

Plaintiff has been treated by psychologist Jean Roe since 2004. In a June 12, 2006 mental impairment questionnaire, Dr. Roe indicated that plaintiff had been seeing her two to three times per month since October 26, 2004, in addition to his monthly visits with a psychiatrist. Dr. Roe diagnosed plaintiff as having recurrent major depressive disorder, with symptoms that included poor memory, mood disturbance, pervasive loss of interests, psychomotor agitation or retardation, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal or isolation, intrusive recollections of a traumatic experience, and possible delusional beliefs. In 2006, Dr. Roe opined that plaintiff's impairments would cause him to be absent from work more than three times a month.

Plaintiff takes Lexapro and Risperdal for his depression. Plaintiff has not always

complied with his doctors' orders for taking medications, however, and failed to take his medications during various periods. On June 12, 2006, Dr. Roe noted that plaintiff had "somewhat improved functioning on medication." On September 15, 2006, Dr. Roe noted: "not able to identify benefit from medication even though improvement is quite evident." Plaintiff testified at the remand hearing that his psychiatrist had increased his Lexapro dosage approximately one-and-one-half months earlier because plaintiff was still getting depressed at the lower dosage level.

As of the time of the hearing on remand, plaintiff was continuing to see Dr. Roe once or twice a week. Plaintiff testified at the 2009 hearing that his depression was about the same as it had been two to three years earlier.

Plaintiff also has a history of using cocaine and alcohol, although at times he has denied using illicit drugs. In April 2005, Dr. Roe characterized plaintiff's abuse of drugs and/or alcohol as "infrequent." In June 2006, Dr. Roe stated that although plaintiff drinks beer and occasionally uses drugs, "this use is limited in nature and does not appear to limit his ability to function." At the hearing on remand, plaintiff testified that he had not used cocaine for approximately one year and two months. He testified that he last had an alcoholic drink the weekend before the hearing.

Medical expert Larry Kravitz opined at the remand hearing that based on a review of plaintiff's medical records, plaintiff did not have any mental impairment that met or equaled a listing. However, Dr. Kravitz concluded that plaintiff did have a functional impairment. Dr. Kravitz testified that plaintiff was moderately impaired in activities of daily living, social functioning, concentration, pace, and persistence.

Dr. Kravitz opined that plaintiff should be limited to understanding, remembering, and

carrying out short and simple instructions. He further opined that plaintiff would at least occasionally would have problems standing for two hours at a time. Dr. Kravitz would limit plaintiff to brief and superficial contacts with supervisors, co-workers, and the general public. Dr. Kravitz testified that he believed plaintiff should be capable of handling ordinary levels of stress "for the most part," but that he would not place plaintiff in an environment with high or unpredictable levels of stress. Dr. Kravitz also testified that he would not place plaintiff in an environment in which there were strict production quotas. Finally, Dr. Kravitz testified that he did not know whether plaintiff would be able to sustain concentration for eight hours a day, forty hours a week, and that it was "hard to tell" how often plaintiff might miss work.

Vocational expert William Sweis testified at the hearing on remand that plaintiff could work none of his past jobs if he had a residual functional capacity for medium work and was limited to unskilled work with simple tasks, with no more than occasional overhead reaching, or pushing and pulling with the right upper extremity; minimal contact with supervisors and co-workers; and a low stress work environment. Sweis opined that there are over 10,000 jobs plaintiff could do even with these restrictions, including cleaning jobs, and production-type work such as assembly and packaging. However, Sweis testified that there would be no jobs available at this skill level if plaintiff was off work more than twice a month on average due to his psychological condition. In addition, Sweis testified that there would be no medium or light jobs available if plaintiff had intermittent loss of use of his non-dominant hand, even if he could work a full forty-hour week.

## III.     Legal Standard

Where the Appeals Council has denied a request for review, the ALJ's decision is the

SSA's final decision.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).  The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court "'conduct[s] a critical review of the evidence,' considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and 'the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.'" *See Briscoe ex rel. Taylor  v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).  Although the Court gives the ALJ's credibility determinations "special deference," the ALJ must "build an accurate and logical bridge between the evidence and the result."  *Ribaudo v. Barnhart,* 458 F.3d 580, 584 (7th Cir. 2006).

Social Security regulations outline a five-step test for determining whether a claimant is disabled:

1.      Whether the claimant is performing substantial gainful activity;

2.      Whether the claimant has a severe impairment or combination of impairments;

3.      Whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;

4.      Whether the claimant's residual functional capacity leaves him unable to perform his past relevant work; and

5.      Whether the claimant is unable to perform any other work existing in significant numbers in the national economy.

*See Briscoe*, 425 F.3d at 352 (citing 20 C.F.R. §§ 404.1520 & 416.920).  In order to find that a claimant is disabled, there must be an affirmative answer at either step three or step five.  *Id*.  The claimant bears the burden of establishing steps one through four; if he does so successfully, the burden shifts to the SSA at step five.  *Id.*

## IV.    June 15, 2009 Decision on Remand

In his decision on remand, the ALJ found that plaintiff has not engaged in substantial gainful activity since July 21, 2003, the date that plaintiff alleges his disability began.  In addition, the ALJ found that plaintiff's right shoulder rotator cuff injury was a severe impairment that limits his ability to reach above his head, and limits him to only occasional grasping, pushing and pulling with his right upper extremity.  The ALJ also found that plaintiff's depression and substance abuse were severe impairments that limit his ability to sustain concentration, thus limiting him to unskilled work.  The ALJ found that the effects of plaintiff's depression would also limit him to minimal contacts with supervisors, co-workers, and the public, and would limit him to working in a low-stress environment.  However, the ALJ concluded that none of these impairments or combination of impairments meets or medically equals a regulation listing.

The ALJ concluded that plaintiff is unable to perform any of his past relevant work because all of plaintiff's previous jobs required full use of both upper extremities and were performed at the medium or higher level.  The ALJ further concluded, based on the vocational expert's testimony, that plaintiff did not acquire any transferable job skills from his past relevant work.

The ALJ then concluded that jobs that exist in significant numbers in the national

economy that plaintiff could perform when he is not using alcohol or illegal drugs. The ALJ found that there was credible evidence that plaintiff had continued to use alcohol and illegal drugs, despite plaintiff's denials, and that "there is no medical reason that, if sober, he could not perform" his daily living and other activities "in a relatively normal manner." Accordingly, the ALJ concluded that plaintiff's addiction to alcohol and/or illegal drugs "would be a contributing factor material to any finding of disabled." The ALJ found that although plaintiff would be "unable to sustain the attention and concentration required for work" when using alcohol or illegal drugs, plaintiff otherwise has the residual functional capacity to perform light work limited to performing simple tasks in a low-stress environment that do not require using the right upper extremity to grasp, push, pull, or reach overhead. Based on the vocational expert's testimony that approximately 10,000 jobs of this nature exist in the Chicago regional economy, the ALJ concluded that plaintiff is not disabled.

## V.     Analysis

Plaintiff argues that the ALJ erred in failing to consider evidence in the record, including evidence regarding plaintiff's limitations in the use of his right hand, and psychological impairments that persisted despite plaintiff's use of prescribed medication and without the effect of alcohol or illegal drugs. Plaintiff also argues that the ALJ improperly rejected the opinions of doctors and treating mental health professionals. Finally, plaintiff argues that the ALJ improperly considered the vocational expert's opinion based on a hypothetical that did not include all of the limitations established by the evidence.

The Court begins by examining the ALJ's conclusions regarding plaintiff's physical impairments. In his decision on remand, the ALJ did not address the notation in Dr. McKenna's

9

December 6, 2004 evaluation that plaintiff was a patient with intermittent weakness and loss of use of his right hand. The government argues that this notation in Dr. McKenna's report reflects only that plaintiff complained of this problem, and that it should be disregarded because it did not reflect a medical conclusion by Dr. McKenna. This argument lacks merit however, because the ALJ did not discount the notation on that basis, but rather did not address it at all. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (stating that judicial review of an ALJ's decision is confined to "the reasons supplied by the ALJ"). Moreover, the ALJ's omission could be a significant one, since the vocational expert testified that there would be no jobs available for an individual who had the complete loss of the use of his non-dominant hand at various times during the day. The Court concludes that the ALJ erred in failing to address this issue.

The Court turns to plaintiff's heart problems. Plaintiff notes in passing in his brief that the ALJ's decision "does not address Mr. Pettaway's cardiac impairments or the impact those impairments might have on his ability to work." Plaintiff does not explain the significance of evidence of his cardiac impairments, or otherwise develop his argument relating to it. Accordingly, the Court will not consider it. *See Gold v. Wolpert*, 876 F.2d 1327, 1332 (7th Cir. 1989) ("perfunctory and underdeveloped assertions" are not arguments, and need not be considered)

The Court next examines plaintiff's argument that the ALJ improperly rejected the opinions of plaintiff's treaters, particularly Dr. Roe, who treated plaintiff frequently and regularly over a long period of time. A treater's opinion is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §

404.1527(d)(2). Even if the ALJ does not give a treater's opinion controlling weight, he may not reject it. Rather, the ALJ must weigh the treater's opinion according to the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the relevant evidence used to support the opinion, the consistency of the opinion with the record as a whole, and the treater's specialty. *Id; see also Campbell v. Astrue*, 627 .3d 299, 308 (7th Cir. 2010).

Despite the Appeals Council's directive, the ALJ's ruling on remand only briefly discussed Dr. Roe's opinions, and failed to specifically address several significant issues. Most importantly, the ALJ failed to address Dr. Roe's opinion that plaintiff's psychological impairments would cause plaintiff to miss work more than three times a month. The ALJ's failure to address Dr. Roe's opinion on this point is critical because the vocational expert testified that there would be no jobs available at plaintiff's skill level if plaintiff missed work more than twice a month on average due to his psychological condition. The Court concludes that the ALJ erred in failing to address Dr. Roe's opinion on this point.

In addition, the ALJ's conclusion that "there is no medical reason that, if sober, [plaintiff] could not perform [daily living and other activities] in a relatively normal manner" is contrary to Dr. Roe's June 12, 2006 opinion that plaintiff's alcohol and illegal drug use "is limited in nature and does not appear to limit his ability to function." However, the ALJ failed to explain why he rejected Dr. Roe's opinion. Although the ALJ questioned the "basic veracity" of plaintiff's allegations because plaintiff has denied using drugs and alcohol while admitting such use to treaters at nearly the same time, a conclusion that plaintiff continued to use drugs and alcohol does not undermine Dr. Roe's opinion that such use did not limit plaintiff's ability to function.

Moreover, the ALJ also failed to cite any evidence in the record supporting his conclusion, and therefore failed to adequately "build an accurate and logical bridge" between the evidence and his conclusion regarding the materiality of plaintiff's drug and alcohol use.

Nor does the Court find the ALJ's general criticism of Dr. Roe's opinions adequate to warrant rejecting them in their entirety. First, the ALJ characterized Dr. Roe's June 12, 2006 opinions as "somewhat unclear" as to whether or not they were based on an assumption that plaintiff was taking his prescribed medications. This criticism carries little weight, however, because the ALJ could have asked Dr. Roe to clarify her opinions if he believed the evidence to have been inadequate. See *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009) (citing 20 C.F.R. §§ 404.1512(e); 404.1527(c)(3)). Indeed, the Appeals Council's remand order specifically invited the ALJ to "request the treating source to provide additional evidence and/or further clarification of the opinion." The ALJ elected not to do so, however, simply noting that Dr. Roe's own records indicated that plaintiff's medications were effective in stabilizing his condition.

In addition, the Court does not find the variation in plaintiff's global assessment of functioning ("GAF") scores noted by the ALJ to be a persuasive reason to reject Dr. Roe's opinion. GAF scores are measures of the severity of symptoms and functional level, and are used for planning treatment. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34, (4th ed. 2000) ("DSM-IV-TR")). Although GAF scores may be helpful in determining a claimant's residual functional capacity, neither the Social Security regulations nor case law requires an ALJ "to determine the extent of an individual's disability based entirely on his GAF score." *Id*.

The ALJ took issue with Dr. Roe's calculation of plaintiff's GAF score as 50[4] in her June 12, 2006 report, on the basis that it was inconsistent with higher GAF scores given by other individuals on other dates.  For example, consulting psychologist John Peggau gave plaintiff a GAF score of 73[5] on November 15, 2006 after a 45-minute evaluation, and psychiatrist Michael Kuna gave plaintiff a GAF score of 65[6] on January 12, 2007.  The ALJ failed to note, however, that other individuals gave plaintiff lower GAF scores on other dates.  For example, psychiatrist Stephen Penepacker also gave plaintiff a GAF score of 50 on September 15, 2008.

Finally, the ALJ observed that the "[medical expert] testified that treatment notes are also inconsistent with Dr. Roe's opinion."  The ALJ does not further identify this evidence, however, and the Court has been unable to find testimony by the medical expert that discusses an inconsistency between treatment notes and Dr. Roe's opinion.  Indeed, the medical expert testified that plaintiff's "ongoing treatment notes describe a somewhat marginal individual," a conclusion that is consistent with Dr. Roe's opinions.  The Court concludes that the ALJ's brief discussion of Dr. Roe's opinion does not provide an adequate basis for rejecting it.

The Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for further hearing.  *See* 42 U.S.C. § 405(g).  If the Court finds that the ALJ's

---

[4]  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV-TR 32.

[5]  A GAF score between 71 and 80 indicates symptoms that are transient and expectable reactions to psychosocial stressors, and no more than slight impairment in social, occupational, or school functioning.  DSM-IV-TR 32.

[6]  A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, "but generally functioning pretty well."  DSM-IV-TR 32.

decision was not supported by substantial evidence, it should remand for further proceedings unless "all factual issues have been resolved and the record supports a finding of disability." *See Briscoe*, 425 F.3d at 356. For the reasons stated above, the Court finds that the ALJ's decision was not supported by substantial evidence, and reverses the Commissioner's decision. Since there are factual issues that remain unresolved, this case is remanded for further proceedings.

**ORDERED:** Plaintiff's motion for summary judgment [14] is granted. Defendant's motion for summary judgment [24] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion.

ENTER:


George W. Lindberg
Senior United States District Judge


DATED: _____July 21, 2011_____